# UNITED STATE DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHAWN MARANDO, | : |
| Plaintiff, | : |
| v. | : Civil No. _____ |
| MICHAEL COX, Individually and as Commissioner of the Boston Police Department; | : |
| PHILLIP OWENS, Individually and as Superintendent-in-Chief of the Boston Police Department; | : |
| BOSTON POLICE DEPARTMENT, | : |
| CITY OF BOSTON, | : |
| Defendants. | : |

# COMPLAINT

## I. JURISDICTION

1. The Court has jurisdiction of the instant complaint pursuant to 42 U.S.C. § 1983, MGL 149 § 185, 28 USC §§ 1367, 2201 and 2202, the constitutions and laws of the United States and Commonwealth of Massachusetts, and the Court's pendant and ancillary jurisdiction.

## II. PARTIES

2.  Plaintiff Shawn Marando, is, and at all relevant times mentioned herein, a Boston Police Officer employed by the Boston Police Department (BPD")

3.  Defendant Michael Cox, according to the BPD public website and public knowledge, is the Police Commissioner of the BPD, and is "responsible for the management, planning, direction and control of the Department."

4.  Defendant Phillip Owens is the Superintendent-in-Chief of the BPD, the highest-ranking police officer in the BPD. Defendant Owens responsibilities, in pertinent part, are to be a part of disciplinary and other proceedings relative to BPD personnel and officers.

5.  Defendant Boston Police Department was at all times mentioned herein Plaintiff's employer, and is an agency of the City of Boston.

6.  The Defendant City of Boston is believed to be a municipal corporation and, through the Mayor of the City of Boston, has overall control of the BPD.

### III. FACTS

7.  Plaintiff Shawn Marando ("Plaintiff") has been a member of the Boston Police Department from 1998 through 2015 and from 2019 until the

present. During the interim years between 2011 through 2015 when he wasn't an active member of the Boston Police Department, Plaintiff was on partial disability due to being shot while on duty. Plaintiff was retired at 72% disability between 2015 until 2019 at which time he returned to full active-duty status.

8.  Plaintiff is 61 years of age, has served in the U.S. Military and is a Disabled American Veteran.

9.  While serving on active duty with the Boston Police Department, Plaintiff has received multiple awards, commendations, etc., including, but not limited to:

    i. Schroeder Brothers Memorial Medal (for valor)

    ii. 2 George L. Hanna Memorial Awards (1 for Valor, 1 for Bravery)

    iii. 2 Medals of Honor.

    *See further, Plaintiff's Exhibit A*, attached to and made a part of this Complaint.

10. On July 4, 2007, Plaintiff made a formal written complaint against his duty supervisor, Lt. Fred Conley by giving said complaint to his area supervisor, Captain Frank Armstrong. In that complaint, witnesses Lt. Jack

McDonough, Captain Frank Armstrong and Deputy Superintendent Darrin Greeley were listed. *See Plaintiff's Exhibit H*, attached to and made a part of this Complaint (Plaintiff's draft of complaint to Federal officials dated February, 2010). Prior to the filing of said complaint, Plaintiff had taken 21 of 30 days off of work in order to avoid harassment by Lr. Conley. *See further, Plaintiff's Exhibit B* attached to and made a part of this Complaint

11. Within 36 hours of filing the complaint mentioned in the previous paragraph, Plaintiff was transferred out of the area he had been then working in and reassigned to one of the most aggressive and violent areas in the Boston Police Department. *See Plaintiff's Exhibit B, supra*, attached to and made a part of this Complaint

12. Before being transferred as noted in the previous paragraph, Plaintiff was not given any hearing, nor had any of the charges been investigated he made in the complaint mentioned above. *See Plaintiff's Exhibit H*, attached to and made a part of this Complaint

13. Upon reporting to his new area of the Boston Police Department as noted above, the captain of said new area inquired of Plaintiff whether he was going to give said Captain any trouble. *See Plaintiff's Exhibit B, supra*, attached to and made a part of this Complaint

14.     Within 10 days of being transferred, Lt. Conley from the previous area Plaintiff had been transferred out of and whom Plaintiff had made his complaint against, was authorized to perform overtime as duty officer for Plaintiff's specific shift. Said Conley then held roll call and gave menacing looks at Plaintiff when other police officers were around, causing these other police officers to inquire of Plaintiff why Conley was doing so. *See Plaintiff's Exhibits B and H, supra,* attached to and made a part of this Complaint.

15.     On or about September, 2007 Plaintiff responded to a domestic violence call. During said call Plaintiff was injured. As a result of the call, a complaint against Plaintiff was filed with the Boston Police Department. Despite policies of the Boston Police Department requiring complaints of this nature to be administered within a short period of time, the Boston Police Department let said complaint linger for over four years, resulting in Plaintiff not being eligible for promotion, advancement, commendations, and retaliating against protected activity. *See, Plaintiff's Exhibit C*, attached to and made a part of this Complaint.

16.     Prior to being shot as noted in a previous paragraph, Plaintiff was persuaded by a fellow officer to buy some anabolic steroids to help Plaintiff recover from another job-related injury. Plaintiff, however, never took said

steroids, instead returning them at a later time and receiving the return of his money. Other officers were later caught taking said steroids and charged with misconduct, and Plaintiff was also implicated and cooperated with authorities when confronted. These other officers were given relatively mild punishments by the Boston Police Department, but Plaintiff was suspended from his job for approximately five-and-a-half months, wherein he couldn't neither work details nor overtime. *See further, Plaintiff's Exhibit D,* attached to and made a part of this Complaint.

17. After serving the suspension noted in the previous paragraph and returning to regular duty, Plaintiff's partner, Joseph Buiel, informed Plaintiff that he no longer wished to work with Plaintiff because he, Buiel, had been told by Boston Police Department personnel that Plaintiff was "destined for termination". In particular, on 4-21-09, Buiel requested to be removed as Plaintiff's partner on patrol, and told Plaintiff at roll call the reason for this was "because he was concerned for his future with the department and he heard [Plaintiff] was destined for termination and anyone that rides with [Plaintiff] will receive the same."

18. At no time during the steroid incident was Plaintiff ever tested to see if he had ever used steroids.

19.     On June 14, 2011, while answering a domestic violence call in Dorchester, Plaintiff ended up being ambushed and shot in the left leg by a suspect. Despite his wounds, Plaintiff returned fire once striking the suspect. Only after the suspect had fired three additional rounds, just missing Plaintiff's head, did he return fire again neutralizing the suspect.

20.     As a result of the shooting incident mentioned above, Plaintiff was placed on disability. However, inconsistently as with other police officers who had been shot and retired, Plaintiff was refused the 100% disability these other officers received due to false statements made by department personnel to City Council members previously in support of the Plaintiff for such full disability.

21.     As a result of being on disability and not receiving the full 100% disability pay, and also not being able to work extra time on details, etc., Plaintiff was eventually forced to return to work in the Boston Police Department in 2019, a distance of 167 miles from his residence.

22.     In 2020, Plaintiff was forced to testify in an internal affairs / homicide investigation concerning that acts of Plaintiff's supervisor, Dorsey, who was being investigated because of her neglect of duty in the matter of the death of a victim she had ordered Plaintiff to take into custody, and who later died

in the police station. *See Plaintiff's Exhibit E*, attached to and made a part of this Complaint.

23.  Approximately two months later during a breaking and entering arrest by Plaintiff, the same supervisor noted in the previous paragraph, Dorsey, indirectly disciplined Plaintiff for his heroic action in the breaking and entering arrest.

24.  In February 2024, the Boston Police Department allegedly received a "tip" that Plaintiff could be involved in corruption during his patrol hours due to his friendly encounters with citizens on his beat. An "investigation" into the "tip" was began by the anti-corruption division of the Boston Police Department, consisting in the most part of following Plaintiff and his partner for some two weeks.

25.  The investigation mentioned in the previous paragraph resulted in no finding of any facts concerning corruption, stating in particular, that "Investigators found no evidence to support the allegations in the tip." However, Plaintiff and his partner were charged for violating several rules concerning traffic stops, body-worn-camera procedures and the like, most of which encompassed Plaintiff's authority to use discretion.

26.     In June, 2024, Plaintiff was given a hearing into the incidents mentioned in the previous paragraph, but months after the incidents had occurred.

27.     On August 5, 2024, the hearing officers finally sent their findings to the Deputy Superintendent of the Boston Police Department.

28.     On September 6, 2024, the Deputy Superintendent submitted his recommendations to the Boston Police Department Commissioner.

29.     On January 7, 2025 Plaintiff's captain supervisor was finally notified that the Commissioner had made an adverse decision against Plaintiff relative to the rule violations mentioned in the previous paragraphs.

30.     On January 29, 2025, Plaintiff's captain finally informed Plaintiff of the decision noted above and that he was going to be suspended for five days with three days to serve if he agreed to a settlement. Plaintiff refused the settlement.

31.     On March 13, 2025, Plaintiff's supervising captain informed him that he was suspended for 5 days, to include his days off beginning March 23 and completing on March 29. Plaintiff immediately gave notice of appeal. Plaintiff served the suspension without pay.

32. On March 18, 2025 Plaintiff was informed that his hearing would occur on May 9, 2025. That hearing was later postponed at the request of the department until May 20, 2025. Subsequent dates where again postponed.

33. Said hearing noted in the previous paragraph finally occurred on October 16, 2025 and no decision has resulted from said hearing as of this filing.

34. Plaintiff has requested to see his Boston Police Department file, but said request has been denied and/or stonewalled.

35. Pursuant to MGL 31 § 41. a tenured employee is entitled to a hearing before disciplinary action can be taken against said employee. After the hearing, the hearing officer "shall ... forthwith" report his findings to the appointing authority for action. "*Within seven days* after the filing of the report of the hearing officer, or within two days after the completion of the hearing if the appointing authority presided, the appointing authority shall give to such employee a written notice of his decision, which shall state fully and specifically the reasons therefor." (emphasis added). An aggrieved person can then note an appeal. If an appeal is asked for, then the aggrieved "shall be given a hearing before the appointing authority or a hearing officer

designated by the appointing authority *within five days after receipt by the appointing authority of such request*." Whenever such hearing is given, the appointing authority shall give the person suspended a written notice of his decision *within seven days* after the hearing." (emphasis added). Even if the suspension decision is upheld after the noted hearing, the aggrieved person may still "may appeal to the commission as provided in section forty-three."

36.     Pursuant to the Boston Police Department Rules and Procedures, Rule 109, once an aggrieved requests a hearing after being notified of a suspension the "hearing must be given within five days of the receipt of such request." *Id.* Sec. 28. Once the initial hearing into the charges for disciplinary action is completed, the hearing officer "shall forthwith submit a written report to the Police Commissioner". *Id.* Sec. 63. "The Police Commissioner shall immediately review the report of the hearing forum" and within "seven days after the filing of the report of the hearing officer, the Police Commissioner shall give to the employee a written notice of his decision stating fully and specifically the reasons therefor." *Id.* Also, *id.*, Sec. 65, stating that the Commissioner must hold a hearing of an appeal within "five days" of the request received by the Commissioner, and then within "two days" of that hearing render a decision.

37. Pursuant to the Boston Police Department Rules and Procedures, Rule 114. Sec. 1, said Department prohibits harassment and retaliation.

> "All employees have the right to file a complaint. The alleged harasser may be the complainant's supervisor, a supervisor in another work area, or someone of higher, lower or equal rank. The complainant could be anyone affected by the offensive conduct, even in instances where the behavior is not directed at that person.
>
> "This policy is not designed or intended to limit the authority of the Department to discipline or take remedial action for workplace conduct which the Department deems unacceptable, regardless of whether that conduct satisfies the definition of sexual or other forms of harassment, discrimination or retaliation proscribed by state and/or federal law. Discrimination, harassment and retaliation are unlawful and will not be tolerated."

*Id.* Sec. 2. "Retaliation" is described as "filing a charge or reporting a complaint of discrimination, harassment or retaliation." *Id.* Sec. 3.C.

38. Plaintiff has been an active police officer with the Boston Police Department for approximately 27 years. During all those years he has personally witnessed untold numbers of police officers subject to the same stonewalling procedures noted in this complaint, transferring them to distant, undesirable assignments, keeping them from promotions, extra work, etc. and being harassed and retaliated against for complaining or reporting illegal or rules violations, for being too-active police officers, etc. Internal disciplinary charges are filed against these types of police officers who do the job they were hired to do to the utmost of their ability, and then those

charges are not swiftly processed, which holds up their careers and hangs as a pall over their heads. *See further, Plaintiff's Exhibit F*, attached to and made a part of this Complaint.

39. During his many years on the Boston Police Department force, Plaintiff has submitted many complaints regarding irregularities within the Department, all of which can be classified as "whistleblower" incidents.

40. During all of Plaintiff's suspensions, he not only was prevented from receiving his regular pay from the BPD, but he also was denied the right to earn additional money by working overtime, details, etc., resulting in substantial loss of income, and at time requiring him to seek loans in order to pay his bills and debts.

41 Plaintiff filed a complaint concerning the above facts with the EEOC in a timely fashion. The EEOC issued Plaintiff a "right to sue" letter dated on September 12, 2025. *See* Exhibit G, attached to and made a part of this Complaint.

42. On many occasions throughout Plaintiff's employment with the BPD he was treated differently, to Plaintiff's detriment, than employees and officers who had been charged with, or found guilty of, equal or more onerous BPD rules and regulations. As just one example of many, the previously

mentioned Dorsey, who was punished for a serious rule and regulation violation in the case of the wrongful death of a suspect, was later promoted to high positions within the BPD. *See, e.g.,* Plaintiff's Exhibits E, F, attached to and made a part of this Compliant.

43. Over the course of Plaintiff's employment with the BPD, because of the various illegal actions of the Defendants, including, but not limited to, Defendants' false charges, Defendants' retaliatory actions, Defendants' failure to expeditiously process charges made against Plaintiff pursuant to statutes, rules and regulations, Defendants' false allegations to Boston City Councilors resulting in diminished disability payments, loss of opportunities to earn overtime and detail pay, and pay increases from promotions, Plaintiff suffered an actual monetary loss of approximately $1,170,500.00.

## IV. CLAIMS

### COUNT I
### (Violation of Due Process)

44. Plaintiff realleges all the previous paragraphs as if set out here.

45. The above facts demonstrate that Defendants have violated Plaintiff's rights to procedural due process in that the statutory required time-lines related to disciplinary proceedings and the BPD rules and regulations were not enforced to

Plaintiff's detriment, all in violation to the U.S. Constitution and the Massachusetts Declaration of Rights.

46.    The above facts demonstrate that Defendants have violated Plaintiffs rights to substantive due process in that he was retaliated against for exercising his First Amendment rights to seek redress of grievances and free speech, and that he was denied the equal protection of the laws, all in violation to the U.S. Constitution and the Massachusetts Declaration of Rights.

## Count II
### (Violation of Equal Protection)

47.    Plaintiff realleges all the previous paragraphs as if set out here.

48.    The above facts demonstrate that Defendants have denied Plaintiff the equal protection of the laws in that he was treated differently than other similarly situated members of the BPD much to Plaintiff's detriment, all in violation to the U.S. Constitution and the Massachusetts Declaration of Rights.

## Count III
### (Violation of First Amendment)

49.    Plaintiff realleges all the previous paragraphs as if set out here.

50.    The above facts demonstrate that Defendants have denied Plaintiff his full rights to petition for a redress of grievances and to do so with being retaliated against and punished much to his detriment, all in violation to the U.S. Constitution and the Massachusetts Declaration of Rights.

## COUNT IV
### (Violation of MGL 149 § 185)

51. Plaintiff realleges all the previous paragraphs as if set out here.

52. The above facts demonstrate that Defendants have retaliated against Defendant for making grievances and complaints against the BPD and its personnel, much to his detriment, all in violation of Massachusetts statutes and in violation to the U.S. Constitution and the Massachusetts Declaration of Rights.

## V. RELIEF

A. A declaration that Plaintiff's constitutional rights have been violated.

B. Compensatory Damages in the amount of $1,170,500.00.

C. Punitive Damages in the amount 0f $10,000,000.00

D. The costs of this action.

E. Reasonable attorneys' fees.

F. A trial by jury

G. Such other and further relief that the Court believes is just, proper and equitable.

THE PLAINTIFF
SHAWN MARANDO pro se

*[signature]*
SHAWN MARANDO
1952 Monroe Rd
Littleton, NH 03561
Email: copkido@yahoo.com