PLAINTIFF'S EXHIBIT H

**Exhibit J – Suppression and Mishandling of Prior Complaint (2007–2010)**
Appendix: Original Complaint Submitted February 23, 2010

(Attached 2/23/10 complaint letter)

Shawn P. Marando

215 Wolomolopoag Street

Sharon, MA. 02067

copkido@yahoo.com

617-794-4523

23 February 2010

John F. Kennedy Federal Building
475 Government Center
Boston, MA 02203-0506

To whom it may concern,

I am submitting the following information to your office in an attempt to assist those concerned with what I am convinced are multiple acts of continued retaliation against me for exercising my employment rights in reporting harassment on 4 July, 2007 to Captain Frank Armstrong, Commander of District E-18.

2

In the pages to follow, I will demonstrate how I <u>continue to experience</u> retaliation since I have filed <u>an internal formal complaint</u> of harassment on 07/04/07 with the Boston Police Department.

I will also demonstrate how the Boston Police Department practices selective treatment and enforcement of its own disciplinary rules and procedures of its members, without regard to the urgency of the matters at hand. I will further demonstrate how I continue to suffer from disparate treatment, retaliation and a hostile work environment by the Internal Affairs Unit specifically.

In reading the pages to follow, I believe an objective, impartial person will understand how neglect and intentional dereliction of duties are allowed to be practiced and condoned by the Internal Affairs Unit.

The above mentioned complaint was served in hand to the commander by myself on that date, specifically naming witnesses holding the ranks of Deputy Superintendent and below, on the morning of Wednesday, 07/04/07. <u>Within two days of doing so, (07/06/07), I was transferred back to District B-3, without ever being formally interviewed or even spoken with concerning the 9 page chronologically detailed formal complaint, as is required in BPD Department Rule # 114.</u> Since that date, at least one person named as a witness in the complaint, holding the rank of lieutenant has been assigned to the Internal Affairs Division, in turn, becoming a hostile witness.

In compliance with the Boston Police Department's "Harassment Policy, Rule # 114", the "Hostile or Abusive Work Environment Harassment" was specifically explained in thorough detail with dates, times and witnesses in that complaint. All witnesses were of this department, which are considered sworn and credible sources. As I have stated previously above, these sources were of the ranks of Deputy Superintendent and below.

3

In quoting Boston Police Department Rule 114, section # 4 "Responsibilities", states;

All employees are responsible for promoting an environment free from harassment and to this end are encouraged to be sensitive to what other employees consider offensive or inappropriate conversation or behavior in the workplace.

**Supervisory personnel are responsible for taking all necessary steps to prevent harassment and to promote and maintain a work environment free from harassment for employees and members of the general public.** <u>**Supervisory personnel will be held responsible for the conduct of an employee, which is known or should have been known to create or which could create harassment against an employee or member of the public, unless immediate and appropriate action has been taken.**</u>

Boston Police Department Rule # 114, Section # 5, "Procedures", further states;

Any Boston Police Department employee who believes that he /she has been the victim of harassment is strongly encouraged to initiate a complaint immediately. In order to provide for the complaint's ease in filing a complaint, several procedural options are available. The complainant may choose to initiate the complaint by reporting it to any of the following;

1. The <u>District Commander</u> or Deputy Superintendent under whose command they work; or, if not applicable, the Superintendent of their Office or Bureau; or a member of the Internal Affairs Division.

   Any Superior Officer informed that an individual wishes to make an allegation of harassment shall not take the complaint himself/herself but shall bring the individual to one of the above persons. If the complainant declines to accompany the Superior Officer to one of the above individuals, the Superior

4

officer shall make out a form 26detailing the complainant's allegations and submit it to the District Commander, Deputy Superintendent, or Bureau Chief.

2. The Boston Police Department's Director of Human Resources; the Affirmative Action Officer assigned to the Supervisor of City Hall; and/or
3. Federal/State Compliance Agencies

Should the complainant choose options #1 or #2 (Internal Options) the following procedures shall be complied with:

The District Commander, Deputy Superintendent, member of the Internal Affairs Division, or Human Resource Director shall;

a) Listen to the complainant's allegations.
b) Discuss the complained of actions with *discretion, sensitivity,* and due concern for the *dignity* of those people involved.
c) Inform the complainant that he/she may have a representative *at the meeting* to assist them in their decision-making (friend, lawyer, etc.).

Upon submitting that formal complaint and being transferred to District B-3, the harassment had not stopped, yet it had merely started to begin.

A meeting was never held to discuss the complaint, nor was there any discretion in the dissemination of that complaint, which in turn resulted in a blatant lack of "sensitivity and due concern for the dignity" of myself and other persons involved'.

Upon my arrival at District B-3, an informal meeting was held between the former Commander, (Captain Claiborne), and myself concerning the letter of complaint I filed against Lieutenant Conley, since he had heard of and "read" the complaint

5

himself.   <u>This action alone demonstrates the improper dissemination of the</u>
<u>complaint.</u>

Within the first two weeks of being reassigned, the focal point of my complaint, Lieutenant Frederick Conley arrived at District B-3 to work an overtime shift at my station.   More specifically, during my shift and during my squad rotation.   If any research was performed on this matter, it would most likely be founded that Lieutenant Conley had not worked District B-3 ever before in his career, or at least during the preceding 10 plus years.   On that night, during my shift, he was not only allowed to work overtime at my newly assigned district, but be my duty supervisor one last time after my harassment complaint was filed.   I believe this action in turn, reflected a 'condoning' of his harassment by this department, with the Lieutenants intent on intimidating me via his arrival.   When he called my name during roll call that evening, I replied with 'Here Sir", but did not look up at him, in an attempt to avoid eye contact.   Immediately following roll call, another officer asked me "What was up with that?"   I asked what do you mean?   That officer replied, "He seemed pissed off at you.   When he called your name he looked straight at you like he was pissed off about something.   I then explained to the officer that, that was why I was transferred back to B-3.   I then remained out of the station for the entire shift in an attempt to avoid any conflict.

I was also contacted by other persons in the complaint listed as witnesses only who were dissatisfied with my listing them as witnesses.   As one witness that is listed in the original complaint put it, 'he was concerned for his future in the department if he had to testify in my behalf'.

During an interview at the Internal Affairs Unit, while accompanied by Attorney Ken Anderson, Lieutenant McDonough greeted me and stated, <u>"What were you thinking</u> <u>when you wrote that?",</u> in reference to the complaint.   He further stated during our conversation that he was, 'actually <u>"quite pissed off"</u> that he was included in the complaint'.

6

This above encounter with the newly assigned witness with the rank of lieutenant also demonstrated the dissemination of the complaint, <u>into the hands of a hostile witness, who now could control, if not take part in any hearings that might end up in the Internal Affairs Unit. This further demonstrates the potential for a continued hostile work environment and the motivation for retaliation.</u>

On 09/22/07, at approximately 00:07 hrs., incident # 070528538, and incident # 070528679 took place at 30 Thane Street, Dorchester. During that same incident, I was injured while restraining a violently combative suspect, who was holding an infant under the age of 1 year old so tightly that the child was suffering from pain. Due to the exigent circumstances of the infant crying from being squeezed so tightly by the father, and the child being held against the fathers left chest area, the option to use spray or taking the suspect to the ground in an attempt to restrain him and avoid injuries to the officers, was no longer available. If the officers were to have used either of those two options, the infant may have suffered injuries via contamination of the spray or contact with the ground. While the suspect was holding the child with his left arm, and violently swinging at the officers with his right arm, I was forced to restrain the suspect without striking him, via one singular joint lock / pain compliance technique. While doing so, the suspect's mother got between the suspect and myself in an attempt to physically separate and release her son from my custody. As a result, while in motion of taking the suspect to the ground, all three of us went to the ground, where she scratched my inner right bicep area drawing blood with her fingernails. That female suspect had to be literally pulled off of my body as she hugged me like a tree, and rode down the length of my body as the officers pulled her off of me. I was actually forced to raise my right leg in order to get her off of me as she continued to hug it as the officers pulled her from her grasp on me. <u>At no time did I ever touch that female suspect, Venus-Williams</u>. As it states in both reports, I was injured with photos taken by then Sergeant Marc Sullivan, the Patrol Supervisor for that evening.

As a result of being scratched by the suspect (Venus-Williams), I was forced to seek dermatological treatment for a rash that started in that bicep area, continued across my chest to my other armpit, and then down to the private areas of my body. That in turn, halted all sexual relations between my wife and myself for months until the

7

rash was remedied. Form 26's were completed and submitted to the medical unit for that prescription of "IC Triamcinolone, 0.1%".

Suspect Venus-Williams filed an Internal Affairs complaint against myself for alleged excessive force that year, which I have since been interviewed by Sgt. Detective Moss. The outcome of that case has been pending now for almost 2.5 years, with many queries by myself, the Boston Police Patrolman's Union and Union Attorney Ken Anderson, without an acceptable reply as to why it is taking so long to make a decision in the matter.

With this matter above being referenced, I have now demonstrated how the Internal Affairs Unit can proficiently practice retaliation and again, dereliction of their duties at their convenience. The only answer rendered to myself via Attorney Ken Anderson from Sgt. Detective Moss thus far has been that the Sgt. Det. '*could not locate* Venus-Williams'. I find that unacceptable of a Sergeant Detective to take 2.5 years to locate an established resident of the neighborhood, and sister of a current Boston Police Officer.

On 12 February 2008, I was relieved of duties upon arrival for my shift at District B-3. I was advised on 02/20/08 by Attorney Jim Higgins that the BPD Form 1920 (complaint) had been completed by Sgt. Detective Daley and submitted in full. On 02/25/08, I was advised that Sgt. Detective Daley had been replaced by investigator Sgt. Detective Moss, for some unknown reason. It would appear to me that at this point, a pattern is developing between Sgt. Detective Moss and the outcome of any Internal Affairs Division case against myself.

On 12 March 2008, I was advised of the reason why I was placed on administrative leave. It took the department *30 days* to inform me why I was being suspended on administrative leave?

In short, (with many attachments included for reference), I did purchase anabolic steroids from a fellow police officer in 2003. After purchasing the items, I had

8

second thoughts concerning my conduct and the consequences of taking the medications. As a direct result, I stored the medication in my residential closet for a period of approximately 60 days before asking the then police officer if I could *return them* for my money back. That officer contacted his supplier and accepted the return. Although I did attempt to correct my improper actions and misconduct, I was further investigated by the Anti-Corruption Unit and the Federal Bureau of Investigations, of which, I was fully truthful in answering and incriminating myself.

With the original BPD Form 1920 filed by Sgt. Detective Daley on 20 February 2008 with *3 charges* / violations of department rules cited, the case was reassigned to Sgt. Detective Moss. <u>I was then *re-interviewed by Sgt. Det. Moss* and as a result, the form 1920 was revised with an *additional 2 offenses* / violations added to it.</u>

Again, I believe this was a direct result of retaliation for filing the original complaint against Lt. Conley with Deputy Superintendent Greeley, Captain Armstrong and Lieutenant McDonough listed as witnesses in that complaint.

If an investigation was held concerning only the suspensions and violations charged each offender, I am more than confident that I have proven disparate treatment and retaliation against myself as <u>I was charged with 5 offenses for not testing positive and being fully truthful during each investigation, while others who had actually tested positive for anabolic steroids, (meaning purchasing, possession, use, and violation of department drug policy had also been committed), had received as little as one singular charge with as little as 5-15 days to serve. One offender even had a prior drug related suspension, yet I served a greater punishment at the hands of the Internal Affairs Division.</u>

Although I testified truthfully in Federal Supreme Court and to this Department in every interview, I was still administratively suspended for 141 days, prior to receiving a working suspension of 45 days. The initial settlement agreement received on 06/08/08, attempted to get me to sign in acknowledgement of a "narcotics violation", which I noticed and refused to do so. Originating from a legal department of police headquarters, I was not sure how a "Schedule III" drug could

9

be mistaken accidentally for a "narcotic", or what it done so purposely as I am led to believe.

A somewhat corrected settlement agreement was signed under complete duress, but I did sign it as I unequivocally required gainful employment after already exhausting my bank savings and an equity line of credit in order to make payments on my personal mortgage obligations and other bills.

In support of my above statement concerning the signing of the settlement agreement, please refer to attached chronological file of my administrative leave during that period. E-mails, phone conversations and meetings were noted with times and dates reflecting each such notation, and my feelings during those periods. I was told by my Attorney, James Higgins, that if I did not sign the settlement agreement, the Department would say that I redistributed the steroids when I returned them for my money back, and terminate my employment. I was then forced to sign the settlement agreement after already exhausting every available cent I had saved, with an additional equity line of credit about to be exhausted as well.

I accepted the consequences of my misconduct and attempted to move forward as I was encouraged to do so by my appointed Attorney James Higgins and fellow sworn officers. I am still trying to do so by continuing to teach free community self defense classes on my own time, without support of the department, as I have for the past 2.5 years even while serving my suspension.

On 04/04/09, Officer Buiel and myself responded to the address of 247 Woodrow Ave., Apartment # 2 for a "Removal", call. On that date, the officers responded to a radio call to 'remove' an unwanted person. Upon arrival, the officers spoke with the caller, (Collins), and attempted to ascertain why she wanted her friend, Hartzog to leave and she stated that 'she just wanted him out. Mr. Hartzog did not do anything, she just wanted him out.' Ms. Collins was uncooperative and appeared to be under the influence of alcohol and other drug substances. Mr. Hartzog, unaware that she wanted him out, while wearing only underwear shorts and wrapped in a blanket, fully complied without hesitation and stated that he would leave. Officer Marando

10

again asked the caller, Collins if Mr. Hartzog had done anything to her, or if there was any other reason he could be arrested and caller Collins stated that there was not, she just wanted him to leave and it was her apartment, not his, where he simply visited now and then. The officers then escorted Mr. Hartzog from the premises without further incident.

At 07:02 hrs., on that same date of 04/04/09, Officers Marando and Buiel returned to that same location for incident # 090178610. On this occasion, Mr. Hartzog became a suspect when he returned to the address and allegedly committed an assault and battery against the now victim, Collins. If you would refer to attached Incident History sheet for that incident, report # 090178610, you will note that it stated;

"CC#8524, CLR STS MALE POLICE TOOK OUT OF HER HOUSE CAME BACK AND TOOK HER KEYS…SHE DOESN'T KNOW WHERE HE IS NOW. SAID HE WAS GONE, THEN IN HALLWAY, THEN SHE DOESN'T KNOW.

TYP: IVPER.

TXT: SOUNDED LIKE OLDER WOMAN, CRYING, SAYING POLICE GOT SOMEONE BUT ARE THINKING OF LETTING HIM GO. HE'S GOT HER KEYS. VERY HARD TO UNDERSTAND."

At this time, since suspect Hartzog became a suspect, a query for warrants was conducted and one was found to be outstanding for his arrest.

It was soon thereafter brought to the attention of the officers that victim Collins had made a complaint against the officers via the Mayors Hotline, with Sgt. Humphreys responding to her address at approximately 09:00 hrs that same date to speak with her. Please refer to a supplemental report written to that same report for his findings and any such Department Form 26's he may have submitted in addition to the report concerning her state of alertness.

As strange as it may seem, the victim never stated in the 911 call that she was struck until the officers arrived, which is out of the norm when receiving and being dispatched to a call where the victim was actually abused. I have actually witnessed alleged victims injure themselves in my presence before in an attempt to get their boyfriends or others arrested.

On 04/21/09, my former partner Officer Joe Buiel requested to be removed as my partner
from the C102A Unit. Upon asking him why that night immediately prior to roll call, he
informed me that it was 'because he was concerned for his future with the department
and he heard I was destined for termination and anyone that rides with me will receive
the same.' I have since worked by myself unless shortages of manpower has deemed
otherwise necessary.

During approximately May of 2009, the former Commander of District B-3, Captain Claiborne conducted a meeting with myself informing me that <u>the complaint from 247 Woodrow Ave was returned from the IAD Unit to be handled at his level, and to have him deal with it</u>. I then explained the incident to him and our response actions as it was a "Removal" call with no crimes committed or alleged. We discussed the incident and I agreed, that although there were no written Department Rules, Regulations, Commissioners Memo, Special Orders, MA General Laws, Criminal procedures or the like directing the officers to conduct themselves otherwise, I would now, after being advised to do so, conduct queries of all persons present during a 'Removal' call, regardless of crimes being committed or not.

Upon reviewing many such 'Removal' calls that other officers were responding to afterwards, it became apparent that <u>once again, my conduct was singled out</u>. Based on unit histories of officers responding to such calls, the normal procedure was to do

12

what we had performed during that response; to simply remove the person from the property without performing a query of him or her for any outstanding warrants.

On 11/15/09, Lt. Troy spoke with me prior to my shifts' end concerning the Departments Early Intervention System and form. In this system, the department identifies any employee that has had any sustained charges within the past 2 year period. The form was originally signed by the former Captain Claiborne on 10/27/09, and signed by Lieutenant Troy on 10/19/09.

Upon reading the form and its contents, I was directed to sign it.

The form, states that there was an EIS / Early Intervention Meeting on "September 29, 2009", yet under the topics of;

"Attendees", none were listed.

" Number of IAD Complaints within 24 Month Period:",

none were listed. The area was left blank, uncompleted.

"IAPro Case #(s):", No cases were stated.

"Identify Potential Problem Areas": It stated

"Prior steroid possession, use, and overly aggressive and abrupt manner often construed as rude or disrespectful."

As I testified and proved in both Federal Court and in Internal Affairs, I never used anabolic steroids and that it was a false statement that I could not sign for. The Lieutenant then used correction white-out to remove the word "Use", from the

statement, in my presence.   (please refer to blank area, between the word "possession", and "overly", in that statement.)

The statement of "<u>Overly aggressive and abrupt manner often construed as rude or disrespectful.</u>", has yet to be explained, but was allowed to be included as part of my personnel file?  I am still awaiting the explanation for that statement.  I believe that this statement was false and placed on this paper with a plan for my termination in mind.

Even with the BPD Form 26 written and submitted on 12/10/09 in reference to that Early Intervention System Form, and that I believe false statements were made in an act of retaliation against me in that form, <u>no person has since even attempted to interview me</u> or explain <u>why</u> those statements were placed on that form.

Under the topic of "Possible Remedies:", it is stated;

*"Make officer aware of how his actions and statements are construed"*

<u>I asked to have that statement explained by the Lieutenant, but it could not be.</u>
<u>I am still waiting for this to be explained.</u>

Under "Action Taken":, it is stated;

"Supervisors made aware of prior problems.  Officer made aware that he is being monitored."

Under "EIS Plan:", it states;

"Closely monitor the officers' actions and activities, in particular changes in behavior, indicating substance abuse.  Supervisors directed to closely monitor officer."

Based on the false information listed on the EIS form, I could not rightfully sign for information that was not true.  Although someone else completed that form with false information listed, I could not sign it and refused to do so unless ordered.

On 12/10/09, under the direction of the Internal Affairs Unit, Lieutenant Troy ordered me to sign the form which I did, "Under order and duress", immediately.

Again, based on the order originating from the Internal Affairs Division, with hostile witnesses still assigned there, I believe I am experiencing a Hostile Work Environment with continued Retaliation.  I further believe Sgt. Detective Moss has intentionally procrastinated the outcome of the complaint of Venus-Williams in an attempt to have my employment with the City of Boston terminated.

On 12/10/09, upon my being ordered to sign the EIS form for Internal Affairs, I completed a Boston Police Department Form 26 advising the Acting Commander, Lieutenant Boyle of the actions I am experiencing as a result of filing that initial harassment complaint on 07/04/07.  (A copy of that BPD Form 26 is attached.)

This past weekend, on Saturday, 02/13/10, I received the disposition of IAD case # E2009-035, as being *Sustained*.

That case references violations of rules 102-4; (Neglect of Duty), and 327-5; (Handling of Domestic Violence).

Again, during that case we responded to a radio call for a Removal, with no Domestic Violence stated, alleged or visible, upon the arrival of the officers or their on scene

15

investigations. It was not until the second such incident did the matter become a domestic related issue requiring the handling of domestic violence. Would it not appear strange to an *objective person*, that after 12 years of working with the Boston Police Department, that this is my first such complaint concerning my response during a "Removal", call, which the IAD Unit has conveniently escalated and re-categorized as a Domestic Violence matter?

With this incident, I am again demonstrating how the Internal Affairs Division is using selective enforcement, retaliation and practicing disparate treatment against myself and now my partner who became a victim in this scenario only because we were partners during this incident. I openly challenge the IAD Unit to prove that the actions of my partner and I were not consistent with the actions of most responding officers since then to each and every "Removal" call. I am not a gambling man, but I am positive that they cannot, as I have proof otherwise.

In summary;

1. I filed a formal complaint in hand to a commanding officer on 07/04/2007. That complaint basically went public by his hands throughout the Department, but *was never addressed officially* by himself or the IAD Unit. (Demonstrating selective enforcement, dereliction of duties, and now the opportunity for retaliation and a hostile work environment).

   I in turn suffered great duress from the neglect of the proper handling of that complaint, the dissemination of the same, and I am still doing so at the hands of the witnesses ranked Deputy Superintendent and below, some of which are or have been assigned to the Internal Affairs Division since.

   During that instance, I find the following Department Rules in violation by this Department and those that should have taken action or have taken wrongful actions since;

Rule 102,     Section # 4, Neglect of duty

                Section # 6, Accountability

                Section # 8, Directives and Orders

Rule 107,     Section # 16, Submitting of written report to Police Commissioner

Rule 109,     Section # 5, Handling of complaints

Rule 114,     Section # 1, Retaliation for reporting harassment, (paragraph # 2)

                Section # 2, Hostile or abusive work environment harassment

                Section # 4, Responsibilities

                Section # 5, Procedures / District Commander

                Section # 5, "B", Formal Complaint Process.


2.  <u>The Internal Affairs complaint filed by suspect Venus-Williams. This case has been prolonged without a foreseeable closure for 2 years and almost 5 months now.</u>


    During this instance, I find the Internal Affairs Division, specifically the assigned investigator, Sgt. Detective Moss to be exceptionally negligent in his duties. His response as to why it has not been closed yet has been quoted as saying, '*he could not locate the complainant for further interviews.*', per Attorney Ken Anderson.


    More specifically, I would find that Department Rule 102, Neglect of duties, is in blatant violation for the convenience of the Internal Affairs Department.


3.  Anabolic Steroids:

During this investigation, many sworn officers were investigated and disciplined as a result of individual violations. I, in turn, was the only officer to receive 5 charges/violations, a 141 day administrative leave/suspension, and a 45 day working suspension for *not* testing positive or even taking the medication, while being entirely truthful and forthcoming when interviewed.

It is extremely difficult for me to understand how the department can justify the punishment I received in comparison to the offenses others have committed?

These actions combined with the fact of Sgt. Detective Moss being reassigned the case after the initial BPD Complaint Form 1920 was already completed and filed by a Sgt. Detective with greater seniority, with only 3 charges, then added 2 additional charges after Sgt. Detective Moss was re-assigned, demonstrated *retaliation* and complete disparate treatment against myself. I believe this originated at a higher level than that of Sgt. Detective Moss since he was assigned the case.

4. 247 Woodrow Ave / "Removal"

Although there is no written procedure on "Removal" calls, and the actions taken by myself and most other officers responding to these calls remain the same to date, we were found in violation of department rules that did not actually pertain to that call. The findings of Deputy Superintendent Alfredo Andres, dated 3 February 2010, stated that my partner and I were in Violation of Rules 102-4, Neglect of Duty and 327-5, Handling of Domestic Violence.

In fact, that was a removal call on the first instance and did not become a domestic violence issue until the second response, during which we responded entirely correctly to.

18

<u>I find that finding to be biased due to the fact that the complainant contacted the Mayors Hotline, not after the initial response of the officers, but after the man returned and actually became a suspect, creating a domestic violence issue.</u>

That complainant, Ms. Collins, was not dissatisfied with our initial response, which in turn, demonstrated that we did in fact do our job to her expectations.

I disagree with the findings of the Deputy Superintendent and request reconsideration of the matter.

<u>This complaint was opened last April and closed 9 months later, inconsistent with the prolonged investigation by Sgt. Detective Moss, now at the 2 year and 5 month point.</u> Sgt. Moss has now taken more than ***3 times as long*** to complete his investigation of the Venus-Williams complaint, with no expectation of closure in the near future.

5. "Early Intervention System / Form"

<u>The form submitted to me was incomplete, altered in my presence, dishonest and still unexplained as it stated it would be.</u>

The statements on the form pertained specifically to those whom had tested positive for steroids, used them and demonstrated behavior consistent with those who had done the same.

Although I brought that to the attention of my supervisor, and he in turn brought it to the attention of Internal Affairs, he was directed to order me to sign the form regardless of the form's false contents.

19

On 20 January 2010, the Police Commissioner implemented an Anti-Lying Policy with the Boston Police Department. Please refer to the link below.

http://www.bostonherald.com/news/regional/view.bg?articleid=1227011

Does this same policy pertain to members of the Department holding the rank of Sgt. Detective and above, who knowingly **alter, and falsify** documents to their or the Departments advantage?

Please understand, I would not have wasted approximately 32 hours of my time writing this letter if I did not feel compelled to do so. I am convinced that my conduct and actions were blatantly blown out of proportion and disciplined to the same extent.

In closing, I am requesting, that;

1. A complete investigation into my performance history since I wrote the letter of complaint against Lt. Frederick Conley.
2. A complete investigation as to why that complaint was not handled correctly.
3. An investigation as to why I was not interviewed after submitting a formal complaint of 9 pages in depth, while a person under the influence of drugs and alcohol received more attention from a mere phone call.
4. An investigation as to why I was transferred within approximately 36 hours of submitting the complaint without first being at least interviewed?
5. An investigation as to why that complaint was disseminated to so many persons, yet the Internal affairs Division 'never received it', but that Lieutenant was "pissed off" for being included as a witness in that same complaint?
6. An investigation as to why was Sgt. Detective Moss allowed to be re-assigned my case after a senior Sgt. Detective (Daley), had already submitted the completed BPD Complaint Form 1920 in full.
7. An investigation as to why I was never brought in for an immediate drug test when it was suspected that I had ever taken anabolic steroids. (In fact, I was

20

never tested until after the settlement agreement was signed, some 141 plus days later.)

8. An investigation as to why Sgt. Detective Moss was allowed to re-file the BPD Form 1920 and add 2 additional charges to it?

9. An investigation as to why Sgt. Detective Moss has prolonged the outcome of the Venus-Williams case, a case where I believe I should have received an award for.

10. An investigation as to why the EIS (Early Intervention System) Form was submitted incomplete.

11. An investigation as to why that same form listed false information, to include;
   a. Identify problem areas; "Use", of steroids. This false statement was erased in my presence with 'white out'.
   b. "Overly aggressive and abrupt manner often construed as rude or disrespectful" (That statement has yet to be explained).

12. An investigation as to why, under "Possible Remedies", the statement "Make officer aware of how his actions and statements are construed", no explanation could be given?

13. An investigation as to why my partner and myself received a Sustained finding for a response to a "Removal", call, where no written policies, procedures, State General Laws, criminal procedures, Commissioner Special Orders, Memos, or Training Orders specify what to do at a call such as that?
   a. Why was this call given greater attention than that of a 9 page, typed, detailed report from myself concerning harassment and retaliation?
   b. Why was this complaint handled within 5 months of being opened, yet my 9 page complaint of harassment has still not been addressed formally after 2 years and 7 months?

14. Concerning the Commissioners new Anti-Lying policy, I would also ask that under oath and penalties of perjury;
   a. Lt. McDonough to be interviewed and asked if he stated to me while assigned to Internal Affairs and in the office, anything to the effect of him being "Pissed", "Pissed off", or "bullshit", about my including him in that complaint dated 07/04/07, as a witness. (This will demonstrate retaliation of Internal Affairs and a biased decision of my investigations, or it will demonstrate untruthfulness). Attorney Ken Anderson was present.
   b. Captain Armstrong be interviewed and asked;
      1. Did he properly notify the IAD Unit of my complaint?
      2. Did he disseminate that complaint to persons other than those assigned to investigate the matter ?
      3. Did he properly, as stated in Rule 114:
         a) Listen to the complainant's allegations?

21

b) Discuss the complained of actions with discretion, sensitivity, and due concern for the dignity of those people involved?

c) Inform the complainant that he/she may have a representative at the meeting to assist them in their decision-making (friend, lawyer, etc.)?

d) Inform the complainant of the Department's harassment policy and complaint procedures and provide the complainant with a copy of the Department policy?

e) Explain the informal and formal processes to the complainant and ascertain which process the complainant wishes to proceed under? Complete either a BPD Form 1920 (Formal Process) or a BPD Form 26 (Informal Process) and any additional reports necessary and forward them through proper channels?

f) Inform the complainant that complaints may be considered untimely if the actions occurred more than one year prior to the filing of the complaint. Inform the complainant that while every reasonable effort will be made to protect the confidentiality and privacy of the individuals involved, an investigation requires that the alleged harasser be informed of the specific allegations and that witnesses be interviewed. All persons contacted or interviewed during the investigation will be requested not to discuss the subject matter of the investigation?

g) Inform the complainant that under the informal process, the possible actions that could be taken or agreed to could consist of additional sensitivity training, oral or written reprimands, or suspensions of up to 5 days.

h) Notify the District/Unit Commanders of the parties involved of the complaint process chosen so they may take immediate, remedial action concerning the allegations. District/Unit Commanders shall attempt to determine if there are any working conditions or practices that encouraged or permitted the alleged conduct to take place, and if so, to eliminate them.

c. Sgt. Detective Moss be interviewed and asked;

1. Was he ever advised of why he was reassigned the case of my steroid investigation?
2. Was he ever directed to add additional charges to the outcome of my Anabolic Steroid investigation by anyone?
3. Has he ever re-interviewed any other department employees after an original BPD Form 1920 had already been submitted in full?
4. Was he ever directed to prolong the Venus-Williams investigation of myself by anyone? And if so, for any specific reason?
5. Has he ever actually responded to the address of Venus-Williams in an attempt to locate and speak with her since after the complaint was received?

In Rule # 113 of the Boston Police Departments Rules and Regulations, the Public Integrity policy is explained.  In Section # 2, listed as "Background", it states;

"In order to maintain the highest standards of honesty and integrity--as a Department and as individuals--we need to attract and retain persons of outstanding character who are qualified and willing to meet the challenges of policing a diverse urban center such as Boston . <u>Additionally, we need to correct and retrain those who have acted in a manner inconsistent with the values of the Boston Police Department and punish and/or terminate those who are unable or unwilling to act in accordance with established standards of ethical behavior.</u>

The necessity of such a course of action--and the need to establish and articulate a public integrity policy--is undeniable given the history of problems encountered in most American police departments, especially those in large urban areas. Boston certainly has not been immune to those problems. <u>Corruption, brutality, *falsifying evidence*, and *bias* cannot be tolerated among individuals sworn to uphold the law. Nor can hypocrisy, **unfairness, deceit and discrimination** be tolerated in an organization dedicated to the highest ideals of justice and the rule of law.</u>"

I strongly believe that my future with this department has been marked for termination as a direct result of exercising my employment rights in filing a

23

complaint of harassment against Lt. Frederick Conley, and listing persons of rank as witnesses in that same complaint.

I believe this letter, combined with the attachments enclosed, will prove beyond a reasonable doubt, that I have become the victim of retaliation and disparate treatment by this department.

I have suffered many injuries during my employment with the City of Boston, to include having my left ankle, Tibia and Fibula broken in 15 places during a shooting of four persons. I have also been awarded with the department medal of Honor and the State Police George L. Hanna Award for Bravery as a result of such, all prior to the filing of that complaint.

Since the filing of that complaint, my career with the Boston Police Department has taken a great turn for the worse.

I do not wish to be transferred from my current assignment at District B-3. I am aware of the tactics of this department and how they frequently seem to transfer personnel to District's farthest from the traveling conveniences of their established residential addresses.

All I am asking at this time, is an impartial, objective investigation into this matter, with appropriate actions taken as a result. I have attempted to resolve this complaint within my department but have received continued disciplinary consequences as a result, which I believe, are a violation of my employment rights.

Thank you in advance for your time and efforts required during the investigation of this complaint.

Respectfully submitted,

Police Officer Shawn Marando

ID # 12130

Attachments;

1. Request to take all accumulated Personal Days, 05/29/07
2. BPD Application for Transfer, 06/01/07
3. Complaint of harassment and retaliatory acts, 07/04/07
4. Chronological notes, 02/12/08 – 02/24/10
5. Incident report #070528538
6. Incident report # 070528679
7. Original for 2019 from Sgt. Det. Daley, 02/20/08
8. Letter to IAD, Lt. Zinc, 03/07/08
9. Notes written to my assigned Attorney, Jim Higgins (4 pages)
10. Note to "Mike" Sullivan, day shift Union Representative concerning splitting of suspension.
11. First settlement agreement, "Narcotics violation"?, received 06/08/08
12. Final settlement agreement, signed 07/01/08
13. Incident History for 1st response to 247 Woodrow Ave., incident # 090178524
14. Incident History for 2nd response to 247 Woodrow Ave. Incident # 090178610
15. Incident # 090178610 / 247 Woodrow Ave.
16. BPD Early Intervention System form, 10/19/09-12/10/09
17. BPD Form 26, concerning 'Signing of BPD EIS form, 12/10/09.
18. BPD Sustained finding of complaint # E2009-035 / 247 Woodrow Ave.
19. Contact names and numbers.